IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TROY GILES | CRIMINAL ACTION<br><br>NO. 94-20-01 |

**MEMORANDUM RE: PETITIONER'S MOTION UNDER 28 U.S.C. § 2255**

**Baylson, J.**                                                                                                       **November 19, 2021**

Before the Court is a motion filed by Petitioner Troy Giles pursuant to 28 U.S.C. § 2255 (ECF 249). Giles is an incarcerated man seeking to have his sentence reduced on the grounds that, in light of the Supreme Court's recent decision in Borden v. United States, 141 S. Ct. 1817 (2021), his prior second-degree felony robbery convictions are no longer Armed Career Criminal Act (ACCA) predicates justifying his sentence. There are three questions at issue: whether the robbery statue under which Giles was convicted is divisible, what mens rea requirement applies to the second portion of the statute if it is divisible, and what burden Giles must meet to establish that he is entitled to a resentencing. Giles need only prevail on one of these three questions to establish that he is entitled to a resentencing. The Court finds that Giles prevails on all three.

**I.     Background**

      **a.   Factual and Procedural History**

On March 18, 1994, Petitioner Troy Giles was convicted of several federal offenses. The Probation Department concluded that Giles was subject to sentencing under the ACCA because of his two previous convictions for "serious drug offenses" and two previous robbery convictions which qualified as "violent felonies" under the ACCA. Once in 1983 and once in 1988, Giles had been convicted of second-degree felony robbery, a violation of 18 Pa. C.S. § 3701(a)(1)(iv).

1

Giles's sentence was enhanced according to the ACCA, and he was sentenced to 408 months of imprisonment. After the Supreme Court invalidated the ACCA's residual clause in Johnson v. United States, 576 U.S. 591 (2015), the Third Circuit authorized Giles to file a new 28 U.S.C. § 2255 motion (ECF 224). Giles filed the present motion on August 5, 2021 (ECF 249). He has been in custody since December 17, 1993. Giles is currently scheduled to be released on April 19, 2023.

**b. Legal Background**

A defendant is subject to the ACCA's sentencing enhancements if he has three or more prior convictions for a "serious drug offense" or a "violent felony." 18 U.S.C. § 924(e)(1). Giles does not dispute that he has two prior convictions for "serious drug offenses." The issue is only whether his prior robbery convictions can serve as the required third predicate.

The ACCA defines a "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). In Johnson, the Supreme Court struck the portion stating "otherwise involves conduct that presents a serious potential risk of physical injury to another," also known as the residual clause, as unconstitutionally vague. After this decision, convictions must satisfy one of § 924(e)(2)(B)'s remaining provisions in order to qualify as a "violent felony." Because robbery is not one of the offenses listed in § 924(e)(2)(B)(ii), it must satisfy § 924(e)(2)(B)(i), which is an offense which "has as an element the use, attempted use, or threatened use of physical

2

force against the person of another." More recently, in Borden v. United States, 141 U.S. 1817 (2021), the Supreme Court held that crimes that can be committed with a mens rea of recklessness do not qualify as "violent felonies" under § 924(e)(2)(B)(i).

To determine whether a past conviction for a state offense qualifies as a conviction for a "violent felony" as listed by the ACCA, courts use a "categorical approach" that entails comparing the elements of the crime of conviction with the elements of a generic version of the offense. "The prior crime qualifies as an ACCA predicate if, but only if, its elements are the same as, or narrower than, those of the generic offense." Mathis v. United States, 136 S. Ct. 2243, 2247 (2016). The categorical approach "focus[es] solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." Id. at 2248.

The Pennsylvania second-degree felony robbery statute under which Giles was convicted stated at the time, "A person is guilty of robbery if, in the course of committing a theft, he: . . . (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury." 18 Pa. C.S. § 3701(a)(1)(iv). Pennsylvania law provides that "[w]hen the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18 Pa. C.S. § 302(c).

Because of the Borden Court's holding that "[o]ffenses with a mens rea of recklessness do not qualify as violent felonies under ACCA," 141 S. Ct. at 1834, the central question in this case is whether Giles, in either of his robbery convictions, was convicted of an offense that can be committed with a mens rea of recklessness. If the robbery offenses of which Giles was convicted

3

of can be committed with a mens rea of recklessness, those offenses do not count as violent felonies under the ACCA and Giles is entitled to a resentencing.

## II. Parties' Contentions

Giles argues that following the Supreme Court's decisions in <u>Johnson</u> and <u>Borden</u>, his prior robbery convictions do not qualify as "violent felonies," and that he therefore does not have the requisite predicates to support his ACCA sentence. (Pet'r's Br. 1–4.) In its Response (ECF 251), the Government argues that the Pennsylvania statute of which Giles was convicted is divisible in two separate offenses, and that one of those offenses is not an ACCA predicate but the other offense is. (Gov't's Resp. Br. 6–15.) The Government also argues that Giles bears the burden of proving that his convictions rest on the portion of the statute that does not qualify as a predicate and that he has not met that burden. (<u>Id.</u> at 15–22.)

In his Reply (ECF 252), Giles argues that the Government's argument that the second-degree felony robbery statute is divisible is foreclosed by the Supreme Court's decision in <u>Mathis v. United States</u>, 136 S. Ct. 2243 (2016). (Pet'r's Reply Br. 4–8.) He also argues that even if the statute is divisible, both portions of it proscribe reckless conduct. (<u>Id.</u> at 8–11.) Lastly, he contends that even if a portion of the statute can be an ACCA predicate, the Third Circuit has held that he only must demonstrate that his prior convictions do not categorically qualify as ACCA predicates under current law. (<u>Id.</u> at 11–15.)

## III. Discussion

### a. Divisibility of the Robbery Statute

In applying the categorial approach, statutory divisibility comes into play when a single statute "list[s] elements in the alternative, and thereby define[s] multiple crimes." <u>Mathis</u>, 136 S. Ct. at 2249. In this situation, a court uses the "modified categorical approach" in which it "looks

4

to a limited class of documents . . . to determine what crime, with what elements, a defendant was convicted. The court can then compare that crime, as the categorical approach commands, with the relevant generic offense." Id.  However, a statute should not be treated as divisible when, rather than listing alternative elements of an offense, it "merely specifies diverse means of a satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense." Id.

The Government concedes that at least one portion of subsection (iv) of the robbery statute can be committed with a mens rea of recklessness: the portion addressing bodily injury. (Gov't's Resp. Br. 7.)  The Government takes the position, however, that subsection (iv) is divisible and encompasses two distinct offenses, the first of which entails inflicting bodily injury and the second of which entails threatening another with or intentionally putting them in fear of immediate bodily injury.  In the Government's view, this second offense can only be committed with a mens rea of intent.  (Id. at 6–7.)  Giles, by contrast, argues that subsection (iv) only encompasses a single offense, which can be committed by several different means.  (Pet'r's Reply Br. 5.)  Because the Government concedes that the first portion of subsection (iv) can be committed with a mens rea of recklessness, a conviction under subsection (iv) would not qualify as a violent felony if the subsection is indivisible.

The Court concludes that Giles's position is the more persuasive one.  Subsection (iv) is best read as describing multiple means by which to commit a single offense.  This is supported by the plain text of the statute.  See Mathis, 136 S. Ct. at 2256 (noting that "the statute on its face may resolve the issue" of divisibility).  If subsection (iv) was meant to be read as encompassing multiple robbery offenses rather than describing multiple means of committing the single offense of second-degree robbery, this would raise the question of why these multiple offenses were compressed into

the same single subsection of the statute in the first place. Nor are the different portions of subsection (iv) treated as different offenses by the statute's grading provision, which simply states that any conviction under subsection (iv) constitutes a second-degree felony. 18 Pa. C.S. § 3701(b)(1); see Mathis, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then . . . they must be elements.").

Interpreting subsection (iv) as indivisible is also consistent with Pennsylvania's model criminal jury instructions. See United States v. Steiner, 847 F.3d 103, 119 (3d Cir. 2017) (citing Pennsylvania's model criminal jury instructions to help determine a statute's divisibility). Pennsylvania's model criminal injury instructions characterize subsection (iv) as constituting a single element that can be established through several different means. See Pennsylvania Suggested Standard Criminal Jury Instructions, § 15.3701B (Pa. Bar. Inst., 3d ed. 2016).

In support of its divisibility argument, the Government places substantial weight on the fact that subsection (iv) contains alternative mens rea requirements, with an intent requirement expressly applying to at least the act of putting the victim in fear of immediate bodily injury and a recklessness requirement applying to at least the act of inflicting bodily injury on the victim. (Gov't's Resp. Br. 14.) But the Government overstates the significance of this; just as statutes can provide interchangeable means of satisfying a single actus reus element, statutes can also provide "interchangeable means of satisfying a single *mens rea* element." Mathis, 136 S. Ct. at 2253 n.3.

### b. Mens Rea Requirements in the Robbery Statute

Even if the Court were to accept the Government's position on divisibility, this would not require that the Court accept the Government's position on the mens rea requirement that applies to the second portion of subsection (iv). The second portion of subsection (iv) expressly attaches a mens rea requirement of intent to the act of putting another in fear of immediate bodily injury.

6

But what mens rea requirement applies to the alternative act of threatening another with immediate bodily injury?

The simplest, plainest reading of the second portion of subsection (iv) is that, because no mens rea requirement is expressly attached to the act of threatening another with immediate bodily injury, a mens rea requirement of recklessness applies. The Government, however, argues that a mens rea of intent applies to threatening another with immediate bodily injury.

### i.  Statutory Interpretation

The Court rejects the Government's contention that "issuance of a 'threat' to inflict 'immediate bodily injury' plainly suggests volitional, intentional conduct." (Gov't's Resp. Br. 8.) Addressing this issue in Larios v. Att'y Gen. United States, the Third Circuit rejected the Government's attempt to "read[] into the lone word 'threat' an 'additional, intentional 'layer' to the mens rea requirement' because it 'suggests that the perpetrator must initially commit a purposeful act.'" 978 F.3d 62, 71 (3d Cir. 2020). Rather, a "threat" to commit a particular act is simply an actus reus with no implicit mens rea of its own. Id. (citing Bovkun v. Ashcroft, 283 F.3d 166, 170 (3d Cir. 2002)).

The Government further argues that because a mens rea requirement of intent applies to putting another in fear of immediate bodily injury, that mens rea requirement of intent also applies to threatening another with immediate bodily injury. The Government cites the Third Circuit's decision in Larios in support of this argument. (Gov't's Resp. Br. 8.) The Larios court did indeed state that "[w]here a statute specifies the mens rea, courts ordinarily interpret it as applying through the statute." 978 F.3d at 71. But the court also found that "nothing in the text, New Jersey law, or our precedent suggest we should stray from that ordinary construction." Id. Pennsylvania law, however, expressly provides for a mens rea requirement of recklessness when no mens rea

requirement is otherwise prescribed in a criminal statute. This Court does not need to guess or speculate about what mens rea requirement attaches to threatening conduct in the Pennsylvania robbery statute. The Pennsylvania Supreme Court "has repeatedly held § 302 provides the default level of culpability where a criminal statute does not include an express mens rea." Com. v. Moran, 104 A.3d 1136, 1149 (Pa. 2014).

Other common principles of statutory interpretation also require this Court to reject the Government's position. It is a "familiar principle of statutory construction . . . that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." Hamdan v. Rumsfeld, 548 U.S. 557, 578 (2006); see also United States v. Nasir, No. 18-2888, 2021 WL 5173485, at *9 (3d Cir. Nov. 8, 2021) (en banc) ("As a familiar canon of construction states, *expressio unius est exclusio alterius*: the expression of one thing is the exclusion of the other."). In this case, the drafters of the robbery statute chose to only mention a mens rea requirement of intent when listing the third and final of the three distinct acts described in subsection (iv). This would be a puzzling way to write the subsection if the drafters had intended a mens rea requirement of intent to apply to the preceding acts listed in the subsection as well. This Court's interpretation is also guided by the rule of lenity, under which "courts must construe penal laws strictly and resolve ambiguities in favor of the defendant." See Nasir, No. 18-2888, at *9–11 (Bibas J., concurring).

### ii. Realistic Probability Standard

The Government alternatively argues that in order to establish that a person can be convicted for recklessly threatening immediate bodily injury under subsection (iv), Giles must meet the "realistic probability" standard—in other words, he must provide examples of people being convicted under subsection (iv) explicitly for recklessly threatening immediate bodily injury.

(Gov't's Resp. Br. 11.) See Salmoran v. Att'y Gen. United States, 909 F.3d 73, 80–81 (3d Cir. 2018) (discussing the realistic probability standard).

In the Third Circuit, however, "where 'the elements of the crime of conviction are not the same as the elements of the generic general offense,'" the reasonable probability standard "is simply not meant to apply." Salmoran, 909 F.3d at 81 (quoting Singh v. Att'y Gen., 839 F.3d 273, 286 n.10 (3d Cir. 2016)). Moreover, even when "as a matter of common sense, it is scarcely conceivable that one could, as a factual matter, recklessly commit" a particular offense, "once we conclude that the textual breadth of a statute is more expansive than the federal generic crime because the mens rea elements are different, a petitioner need not show that there is a realistic chance that the statute will actually be applied in an overly broad manner." Cabeda v. Att'y Gen. of the United States, 971 F.3d 165, 175–76 (3d Cir. 2020).

The fact that Pennsylvania law expressly provides a recklessness mens rea requirement for elements of criminal offenses that otherwise lack a mens rea requirement brings the second portion of subsection (iv) out of alignment with the generic offense, eliminating any need to apply the realistic probability standard.

### c. Issue of Burden and Shepard Documents

Even if the Court were to accept the Government's positions on both divisibility and the mens rea requirement for the second portion of subsection (iv), this would not be the end of the analysis. Assuming, for the sake of argument, that subsection (iv) encompasses two separate offenses, the next step would be to determine under which of those two offenses Giles was convicted. To make this determination, courts look at a limited set of "Shepard documents" from the record of a prior conviction. These documents include the charging document, any written plea agreement, any transcript of a plea colloquy, and any explicit factual finding by the trial judge

9

to which the defendant assented. See Shepard v. United States, 544 U.S. 13, 26 (2005). If the Shepard documents fail to illuminate the court on this question, the court must treat the multiple offenses contained within the divisible statute as a single offense and apply the categorical approach as if the issue of divisibility had never arisen. United States v. Peppers, 899 F.3d 211, 232 (3d Cir. 2018) ("Without Shepard documents, the categorical and modified categorical approaches are the same, and the sentencing court is forced to proceed under the categorical approach.").

The Government concedes that neither the Shepard documents for Giles's 1983 robbery conviction nor the Shepard documents for Giles's 1988 robbery conviction clearly establish which portion of subsection (iv) Giles was convicted under. The Government further concedes that the Shepard documents for Giles's 1988 conviction provide some reason to believe that Giles was convicted for inflicting bodily injury rather than for threatening another with or intentionally putting another in fear of immediate bodily injury. (Gov't's Resp. Br. 22.) The Government contends, however, that the burden is on Giles to prove that he was not convicted under the portion of subsection (iv) that, in the Government's view, is both divisible from the first portion of the subsection and does not allow for conviction with a mens rea of recklessness.

In support of this argument, the Government cites the Supreme Court's decision in Pereida v. Wilkinson, 141 S. Ct. 754 (2021), in which the Court considered the categorical approach as applied in the immigration context. (Gov't's Resp. Br. 18–20.) In Pereida, the Court held that an immigrant seeking discretionary cancellation of an order of removal must prove all aspects of their eligibility, including that they have not been convicted of a disqualifying criminal offense. Id. at 768. But the Pereida Court repeatedly emphasized that its decision was grounded in what "[t]he INA expressly requires," and limited its holding to cases concerning the INA. Id. at 758, 767. In

10

the present case, which does not involve the INA whatsoever, Pereida does not displace the Third Circuit's decision in Peppers, which speaks specifically to the categorical approach as applied under the ACCA.

The Shepard documents for Giles's 1988 robbery conviction, to the extent that they show anything, suggest that Giles was convicted under the portion of subsection (iv) that the Government concedes has a mens rea requirement of recklessness. The Shepard documents for Giles's 1983 robbery conviction provide no indication of what portion of subsection (iv) Giles was convicted under. Therefore, even if the Government were to be correct both that subsection (iv) is divisible and that the second offense contained in the statute requires a mens rea of intent, the Court must treat subsection (iv) as indivisible in applying the categorical approach and conclude that a person can be convicted under subsection (iv) with a mens rea of recklessness.

### IV. Conclusion

The Court finds as follows:

1. Subsection (iv) of the robbery statute is indivisible;

2. Even if the subsection were to be divisible into two separate offenses, both offenses can be committed with a mens rea of recklessness; and

3. Even if the subsection were to be divisible into two separate offenses and only one of those offenses can be committed with a mens rea of recklessness, Giles has met his burden to show that his robbery convictions do not qualify as ACCA predicates under current law.

The Court will therefore grant Giles's motion. An appropriate Order follows.

O:\Criminal Cases\94-20-01 Giles, US v\94cr20-01 Memorandum re 2255 Motion.docx